**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CINTAS CORPORATION,<br><br>Petitioner,<br>v.<br><br>IMAGEFIRST HEALTHCARE LAUNDRY SPECIALISTS, LLC,<br><br>Respondent. | No. ______________________ |

**CINTAS CORPORATION'S PETITION TO ENFORCE ARBITRATION SUBPOENA TO NON-PARTY IMAGEFIRST HEALTHCARE LAUNDRY SPECIALISTS, LLC**

Pursuant to Section 7 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 7, Petitioner Cintas Corporation ("Cintas") respectfully petitions this Court to enforce an arbitration subpoena *duces tecum* (the "Subpoena") issued by the Honorable Paul Holtzman (the "Arbitrator"), Arbitrator in a pending American Arbitration Association ("AAA") arbitration, captioned *Cintas Corp. v. Brosnan*, AAA Case No. 01-25-0002-1633 ("Arbitration"). The Subpoena directs non-party ImageFIRST Healthcare Laundry Specialists, LLC ("ImageFIRST") to produce documents relevant to Cintas' claims in the Arbitration. The Subpoena was properly issued by the Arbitrator on May 25, 2026 pursuant to the FAA and subsequent to its issuance, Cintas and ImageFIRST (collectively referred to as the "Parties") have, through counsel, met and conferred in an effort to resolve existing disputes concerning the scope of documents required to be produced under the Subpoena. While the Parties have negotiated an agreed scope of production in response to some of the document requests in the Subpoena, for other requests ("Disputed Requests") ImageFIRST has indicated that it will not produce documents in response to those requests and will instead stand on its objections. Cintas submits that ImageFIRST is required, under the FAA to produce the documents in its possession, custody, or control responsive to each of the Disputed Requests, but

in an effort to further narrow the scope of discovery sought from ImageFIRST, Cintas requests enforcement of only a subset of the Disputed Requests.

Cintas is a full-service uniform and facility-services company that sells, processes, distributes, and provides laundry service for corporate-identity work uniforms and related facility-service products to customers throughout the United States, including for customers within the healthcare industry. ImageFIRST is a Cintas competitor that similarly provides linen rental and laundry services for customers in the healthcare industry and directly competes with Cintas with respect to at least medical scrubs, medical curtains, microfiber cleaning products, and floor mats, amongst other products and services.

On June 25, 2025, Cintas commenced the Arbitration against former Cintas employee Brian Brosnan alleging that Brosnan, who had accepted a substantially similar position with ImageFIRST, was violating the non-solicitation, non-disclosure, and confidentiality obligations contained within his employment agreement with Cintas through his work with ImageFIRST and also that Brosnan had misappropriated Cintas' trade secret information. The Arbitrator issued the Subpoena at Cintas' request in order to obtain relevant discovery from Brosnan's current employer, ImageFIRST, relating to Cintas' claims in the Arbitration. The hearing in the Arbitration is currently scheduled to occur on November 9-11, 2026.

The subset of Disputed Requests for which Cintas requests this Court direct ImageFIRST to produce responsive documents is important to Cintas' allegations in the underlying Arbitration. In the Arbitration, Cintas alleges that Brosnan, amongst other things, misappropriated Cintas' trade secret information relating to customer names and contact information, customer preferences, pricing and margins, marketing strategies, operational and sales knowledge unique to Cintas, and specialized training for use in his role at ImageFIRST. Indeed, since Brosnan's separation from

Cintas, Cintas conducted a forensic analysis of Brosnan's Cintas-issued work laptop that suggests that shortly before Brosnan's departure from Cintas, Brosnan transferred hundreds of documents from his Cintas-issued laptop to a removable storage device, including Excel, PowerPoint, Word, and PDF documents.

Cintas' concern is that Brosnan has used and is using these documents downloaded from his Cintas-issued work computer at competitor ImageFIRST to gain an unlawful competitive advantage in his new role. As such, Cintas asks this Court to compel production of the following categories of documents that target information squarely relevant to this concern:

- All documents and materials relating to sales activities and other work performed by Brosnan on behalf of ImageFIRST, including any presentations, proposals, or marketing materials related to same;
- All documents and communications concerning ImageFIRST's actual or potential competition with Cintas, including identification of particular customers or potential customers for which ImageFIRST and Cintas are competing, the products or services with respect to which ImageFIRST and Cintas are competing, and related competitive analyses, strategy documents, and communications; and
- All documents sufficient to identify Brosnan's participation, input, or involvement in any customer solicitations, including but not limited to, each customer and prospective customer with which Brosnan has communicated in any way, and any bids, proposals, and quotes furnished with respect to any such customer or prospective customer.

Each of the above requests is highly relevant to Cintas' allegations in the Arbitration. Cintas seeks documents and materials related to Brosnan's sales activity at ImageFIRST because of its

concern that Brosnan has incorporated the files downloaded from his Cintas work computer into material he's using and leveraging at ImageFIRST. Cintas seeks documents evidencing ImageFIRST's competition with Cintas and the products and services for which Brosnan has responsibility because Cintas understands that Brosnan will challenge in the Arbitration whether Cintas and ImageFIRST are competitors. Cintas seeks documents reflecting Brosnan's participation and involvement in customer solicitations at ImageFIRST because Cintas also alleges that Brosnan breached his non-solicitation obligations set forth in his employment agreement with Cintas. Cintas is further not seeking to compel the production of documents in response to all requests in the subpoena for which ImageFIRST has only objected in response, but limits this Petition to Enforce to only three of the original fifteen document requests in the Subpoena.

As such, the documents that Cintas asks this Court to direct ImageFIRST to produce are highly relevant to Cintas' claims in the underlying Arbitration, and Cintas has limited to scope of the document requests with which it seeks compliance in the Petition and so any burden on ImageFIRST in producing these documents will be limited. Therefore, Cintas respectfully requests that this Court grant this Petition to Enforce compliance with the Subpoena and direct ImageFIRST to produce the categories of documents specifically requested herein.

## I. PARTIES

1. Petitioner Cintas Corporation is a corporation organized and existing under the laws of the State of Washington, with its principal place of business located at 6800 Cintas Boulevard, Mason, Ohio 45040.

2. Respondent ImageFIRST Healthcare Laundry Specialists, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located in King of Prussia, Pennsylvania.

## II. JURISDICTION AND VENUE

3. This is a proceeding to enforce an arbitration subpoena arising under Section 7 of the FAA that states, in relevant part, that an arbitrator "may summon in writing any person to attend before them [] as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. . . . [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition to the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators . . ." 9 U.S.C. § 7; *see also Maine Community Health Options v. CVS Pharmacy, Inc.*, Case No. 1:20-cv-00010, ECF No. 24 (D.R.I. Apr. 3, 2020) (granting-in-part petition to enforce arbitration subpoena duces tecum to third party under Section 7 of the FAA).

4. This Court has personal jurisdiction over ImageFIRST as the relief requested in this Petition to Enforce arises from at least ImageFIRST's transacting business in the Commonwealth of Massachusetts and contracting to supply services or things in the Commonwealth of Massachusetts, and exercise of personal jurisdiction over ImageFIRST would not offend traditional notions of fair play and substantial justice. Specifically, ImageFIRST provides fully managed healthcare laundry services across the Commonwealth of Massachusetts. ImageFIRST actively markets, sells, and provides rental and laundry services for healthcare linen, patient gowns, medical scrubs, amongst other products and services, to hospitals, health systems, outpatient centers, and other medical facilities throughout Massachusetts, including in Boston, Quincy, Braintree, Plymouth, Abington, South Pond, Fall River, New Bedford, Orleans, Springfield, Lawrence, Salem, Cambridge, and Worcester. ImageFIRST maintains dedicated service area coverage for Massachusetts, solicits Massachusetts customers through its website and

sales force, has numerous employees in Massachusetts, including Brosnan, and regularly delivers products and services to healthcare facilities within this judicial district. As such ImageFIRST's activities in Massachusetts constitute deliberate and continuous commercial engagement within the Commonwealth.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties to this Petition to Enforce are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is appropriate in this judicial district pursuant to 9 U.S.C. § 7, as ImageFIRST has indicated it will not produce documents in response to certain of the document requests in the Subpoena and as such ImageFIRST has "refuse[d] . . . to obey said summons," thus necessitating Cintas to "petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting" to compel compliance with the Subpoena.

## III. FACTUAL AND PROCEDURAL BACKGROUND

7. Cintas is a full-service uniform and facility-services company that sells, processes, and distributes corporate-identity work uniforms and related facility-service products to customers throughout the United States. In addition to providing work uniforms, Cintas provides uniform laundry service to a wide variety of industries across North America, including uniforms, garments, and linens for the healthcare industry.

8. Cintas has spent significant time and made significant investments to develop its goodwill, brand recognition, relationships with clients, sales techniques, pricing strategies, marketing strategies, and proprietary processes and operations, all of which it considers its confidential business information. Cintas uses and relies upon its confidential business information to effectively compete and maintain its position as the "go to" business for workplace uniform and

related facility-services. Accordingly, Cintas takes reasonable measures to protect its confidential business information, as maintaining the confidentiality of this information is essential to the commercial success of Cintas' business.

9. On June 25, 2025, Cintas commenced the Arbitration against its former employee, Brian Brosnan, who left Cintas to take a substantially similar position with Cintas competitor ImageFIRST. In the Arbitration, Cintas alleged that Brosnan breached the terms of his employment agreement with Cintas, including the non-solicitation, non-disclosure, and confidentiality obligations contained therein, by soliciting, recruiting, approaching, inducing, hiring, or attempting to hire Cintas' employees and/or customers, and improperly using and disclosing Cintas confidential business information, including, but not limited to, customer names and contact information, customer preferences, pricing and margins, marketing strategies, operational and sales knowledge unique to Cintas, and specialized training, to further ImageFIRST's business in violation of Brosnan's agreements with Cintas. Cintas also alleged that Brosnan misappropriated Cintas' trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. et seq. and the Massachusetts Uniform Trade Secrets Act, M.G.L. c. 93 § 42-42G et seq.

10. Indeed, following the initiation of the Arbitration a forensic examination of Brosnan's Cintas-issued work computer evidenced that shortly before Brosnan departed Cintas, he connected an external drive to his Cintas computer and transferred hundreds of documents from his Cintas-issued laptop to the external drive. It is Cintas' contention that these files were transferred to the external drive by Brosnan for use at ImageFIRST. Additionally, given Brosnan's 16-year tenure at Cintas, his extensive knowledge of Cintas' sales and sales training strategies, techniques, and methods, and Brosnan's substantially similar responsibilities at ImageFIRST,

Cintas contends it is inevitable that Brosnan will use Cintas confidential business information concerning sales and sales training in Brosnan's competing role at ImageFIRST.

## IV. THE SUBPOENA TO NON-PARTY IMAGEFIRST

11. On May 25, 2026, the Arbitrator, pursuant to his authority under 9 U.S.C. § 7, issued the Subpoena to ImageFIRST commanding that it to produce specified categories of documents within 14 days of service of the Subpoena. The Subpoena is attached hereto as **Exhibit A**.

12. Cintas served the Subpoena on ImageFIRST on May 27, 2026. *See* **Exhibit B**.

13. The Subpoena seeks targeted categories of documents concerning Brosnan's employment with ImageFIRST, including his personnel and hiring records, documents reflecting his job duties and responsibilities, materials he created or accessed while employed by ImageFIRST, customer and sales-related information, documents concerning competition between ImageFIRST and Cintas, and records concerning any use or disclosure of Cintas information. The requested materials are directly relevant and material to the claims asserted in the Arbitration.

14. On July 8, 2026, ImageFIRST served its Responses and Objections to the Subpoena ("Subpoena Response"). *See* **Exhibit C**. In its Subpoena Response, ImageFIRST provided only objections in response to over half of the document requests made within the Subpoena. The Parties subsequently met and conferred in an effort to resolve the disputes amongst the Parties concerning the appropriate scope of the document requests to which ImageFIRST continues to maintain objections, however despite those efforts to negotiate an agreed-to scope of those outstanding requests the Parties were unable to and remain at an impasse as to Subpoena document request numbers 3, 7, 8, 9, 11-14. *See* **Exhibit D**. ImageFIRST subsequently served supplemental responses to certain of the document requests in the Subpoena, none of which supplemental responses pertain to the documents sought through this Petition to Enforce. *See* **Exhibit E**.

ImageFIRST has further indicated that it will not produce any documents in response to the Subpoena until 9 am ET on the first day of the currently scheduled hearing in the Arbitration. *See* Exhibit D.

15. Despite the fact that ImageFIRST is standing on its objections for over half of the document requests in the Subpoena issued by the Arbitrator, to further narrow the scope and ease any alleged burden on ImageFIRST in producing documents in response to the Subpoena, Cintas only seeks this Court's enforcement of three out of the original fifteen document requests, specifically request numbers 9, 12, and 14 (the "Narrowed Requests"). *See* Exhibit A at 6.

16. Each of the Narrowed Requests are highly relevant to Cintas' underlying claims in the Arbitration and are narrowly tailored so as to limit any burden on ImageFIRST in the collection and production of the requested material:

a. **Request No. 9 –** This request seeks documents and materials utilized by Mr. Brosnan in sales-related activities at ImageFIRST, including presentations, proposals, and marketing materials used for that purpose. *See id*. Cintas is concerned that the contents of the hundreds of documents Brosnan downloaded to the external drive shortly before leaving Cintas have made their way into sales-related ImageFIRST documents used to compete with Cintas. The only way Cintas can determine whether this improper conduct has occurred is to review the ImageFIRST documents likely to contain such material improperly downloaded from Brosnan's Cintas-issued work computer. Brosnan further refused to produce the material sought in this request arguing that the information sought belongs to ImageFIRST and thus ImageFIRST is the only source through which Cintas can obtain this relevant information.

b. **Request No. 12 –** This request seeks documents and communication relating to ImageFIRST's competition with Cintas, including identification of customers for which ImageFIRST and Cintas compete, identification of ImageFIRST's and Cintas' competing products and services, including any competitive analysis and/or business strategy-related documents concerning the same. *See id*. Brosnan disputes that ImageFIRST and Cintas are competitors and has further refused to produce the material sought in this request arguing that the information sought belongs to ImageFIRST and thus ImageFIRST is the only source through which Cintas can obtain this relevant information.

c. **Request No. 14 –** This request seeks documents sufficient to identify Brosnan's participation, input, and involvement in customer solicitations at ImageFIRST including the customers and prospective customers with which Brosnan has communicated and the bids, proposals, or quotes furnished to such customers or prospective customers. *See id*. This information is necessary to determine whether Brosnan has breached his non-solicitation obligations to Cintas as set forth in his employment agreement by soliciting Cintas customers and also whether Brosnan is leveraging any Cintas confidential business information into any bids, proposals, or quotes furnished to customers or prospective customers at ImageFIRST. Brosnan has refused to produce the material sought in this request arguing that the information sought belongs to ImageFIRST and thus ImageFIRST is the only source through which Cintas can obtain this relevant information.

17. The documents sought from ImageFIRST are important to Cintas' allegations in the Arbitration. Cintas alleges that, after leaving Cintas for a direct competitor, Brosnan used or disclosed Cintas' confidential information and trade secrets in his work for ImageFIRST in violation of his contractual and other obligations to Cintas. The most probative evidence bearing on those allegations resides with ImageFIRST and concerns Brosnan's hiring, job duties, work, customer interactions, access to company information, and any use of Cintas materials during his employment with ImageFIRST. Because ImageFIRST employs Brosnan and maintains these records, the documents sought in the Narrowed Requests are unavailable from any other source, and as such represent the narrowest and least burdensome method by which Cintas can obtain this highly relevant discovery.

## V. THE SUBPOENA IS VALID AND ENFORCEABLE UNDER THE FAA AND THE COURT HAS JURISDICTION TO ENFORCE THE SUBPOENA

18. This Court is authorized pursuant to Section 7 of the FAA to enforce the Subpoena. Section 7 of the FAA authorizes arbitrators to "summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. Section 7 further provides:

> [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

*Id.*

19. U.S. District Courts regularly compel compliance with arbitration subpoenas seeking production of documents from third parties. *See, e.g., Maine Community Health Options*

*v. CVS Pharmacy, Inc.*, 2020 U.S. Dist. LEXIS 40313 (D.R.I. Mar. 9, 2020) (recommending granting in part petition to enforce third-party arbitration subpoena seeking transaction data and documents); *Washington Nat'l Ins. Co. v. OBEX Group LLC*, 958 F.3d 126, 128 (2d Cir. 2020) (affirming district court's denial of motion to dismiss petition to enforce arbitration subpoena and denial of motion to quash arbitration subpoena); *Maine Community Health Options v. Walgreen Co.*, Case No. 18-mc-0009, 2018 U.S. Dist. LEXIS 214029, at *2 (W.D. Wis. Dec. 20, 2018) (granting motion for enforcement of arbitration subpoena for testimony and production of documents).

20. This Court also has subject matter jurisdiction over Cintas' request for enforcement of the Subpoena pursuant to 28 U.S.C. § 1332 based on the diversity of the parties to this action. Because ImageFIRST is a Delaware corporation with its principal place of business in Pennsylvania, and Cintas is a Washington corporation with its principal place of business in Ohio, there is complete diversity. Further, the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

## VI. IMAGEFIRST'S OBJECTIONS ARE NOT PROPER GROUNDS TO DENY ENFORCEMENT OF THIS SUBPOENA

21. ImageFIRST's broad objections to the Subpoena are not a sufficient basis to deny enforcement of the Subpoena where the Arbitrator has already considered the materiality of the documentation sought in the Subpoena and determined to issue the Subpoena seeking the discovery requested therein, and ImageFIRST will suffer no undue burden in making the requested productions.

22. "Section 7 of the FAA authorizes arbitration panels to issue subpoenas for 'material' evidence. Consistent with this delegation, courts uniformly construe the FAA as empowering the arbitration panel – and not the courts – to assess what is material to the arbitration dispute. . . .

Thus, the court's traditional relevancy determination based on Fed. R. Civ. P. 26(b)(1) is set aside in favor of the arbitration panel's determination of materiality. . . . In sum, in the unique context of an arbitral subpoena, the FAA reserves materiality (in other words, relevance) determinations for the arbitration panel, while courts still have the Fed. R. Civ. P. 45 duty to assess the subpoena's burden and ensure that the third party is not subject to 'undue burden or expense.'" *Me. Cmty. Health Options v. CVS Pharm., Inc.*, C.A. No. 20-10JJM, 2020 U.S. Dist. LEXIS 40313, at *10-12 (D.R.I. Mar. 9, 2020); *see also, e.g., In re Sec. Life Ins. Co. of Am.*, 228 F.3d 865, 870, 71 (8th Cir. 2000) (disagreeing with "conten[tion] that § 7 required the district court to make an independent assessment of the materiality of the information sought by [Petitioner] before acting to compel compliance with the [arbitration] subpoena," and finding that it would be "antithetical to the well-recognized policy favoring arbitration, and compromise[e] the panel's presumed expertise in the matter at hand," to "saddle" the federal district court with the burden of making such an independent assessment.).

23. "[T]he relevance of the information and appropriateness of the subpoena should be determined in the first instance by the arbitrator . . . . [I]t is not the function of [the federal district court] to determine what an arbitrator would or should find relevant in resolving a dispute." *Am. Fed. of Television & Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1010 (6th Cir. 1998); *see also Odfjell Asa v. Celanese AG*, 348 F. Supp. 2d 283, 287-88 (S.D.N.Y. 2004 ("[T]here is no reason for the Court to decide these issues [related to the subpoena target's objections], at least in the first instance, since one of the very reasons for making these subpoenas returnable before one or more members of the arbitration panel is so that the arbitrator can rule on preliminary issues of admissibility, privilege, and the like. . . . This approach . . . is also consistent with the great deference which must be paid to arbitral panels by federal courts.") (internal citations and

quotations omitted); *Fed. Ins. Co. v. Law Offices of Edward T. Joyce, P.C.*, No. 08 C 0431, 2008 U.S. Dist. LEXIS 20713, at *2-3 (N.D. Ill. Mar. 13, 2008) ("[T]he [subpoena target] contends the subpoena should not be enforced because it seeks irrelevant materials and some privileged documents, is overbroad, and should have been pursued earlier in the arbitration discovery process. All of these contentions, however, should be raised with the arbitration panel. They are not issues that should be decided by a [federal district court] in the first instance.").

24. The documentation sought in the Narrowed Requests are each highly relevant to Cintas' underlying claims in the Arbitration, as discussed in Section IV, *supra*. Further, the collection and production of the requested documents will not cause ImageFIRST undue burden as the narrowed requests are limited to discrete categories of information readily accessible to ImageFIRST and/or Brosnan and these are categories of documents likely have or will in the near future be collected and produced in any event in a co-pending federal district court action pending in the Eastern District of Pennsylvania between Cintas and ImageFIRST that also includes allegations relating to Brosnan's and other former Cintas employees' conduct in leaving Cintas for ImageFIRST. *See Cintas Corp. v. ImageFIRST Healthcare Laundry Specialists*, Civ. A. No. 2:26-cv-00302-JFM, ECF No. 1 (E.D.P.A. Jan. 16, 2026). As such, ImageFIRST will already likely be required to collect and produce the very documents sought in the Subpoena and as such there will be no additional burden on ImageFIRST in collecting and producing those documents.

## VII. RELIEF REQUESTED

25. For the forgoing reasons, Petitioner respectfully requests that this Court enter an Order:

a. Compelling compliance with the Subpoena as requested herein; and

b. Granting such other and further relief as may be appropriate.

Dated: September 21, 2026

Respectfully submitted,

CINTAS CORPORATION,

By its attorneys,

*/s/ Nicholas W. Armington*
Stephen T. Paterniti
Eve R. Keller
Nicholas W. Armington
Natalya R. Minoff
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, MA 02116
Tel: 617-367-0025
Fax: 617-367-2155
Stephen.Paterniti@jacksonlewis.com
Eve.Keller@jacksonlewis.com
Nicholas.Armington@jacksonlewis.com
Natalya.Minoff@jacksonlewis.com

**LOCAL RULE 37.1 CERTIFICATION**

Counsel for Cintas, Nicholas W. Armington, and counsel for ImageFIRST, JT Charron and Robin Samuel, convened telephonic meet and confers concerning the Subpoena and the documentation and information sought in the Subpoena document requests on June 9, 2026 and August 18, 2026. As set forth herein, while the Parties were able to negotiate an agreed scope of production in response to some of the document requests in the Subpoena, with respect to the Disputed Requests ImageFIRST has indicated that it will not produce documents in response to those requests and will instead stand on its objections.