**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

Cintas Corporation

Petitioner,

-against-

ImageFIRST Healthcare Laundry Specialists, LLC,

Respondent.

Civil Action No. 1:26-mc-91496-AK

**IMAGEFIRST HEALTHCARE LAUNDRY SPECIALISTS, LLC'S OPPOSITION TO CINTAS CORPORATION'S PETITION TO ENFORCE ARBITRATION SUBPOENA**

Respondent ImageFIRST Healthcare Laundry Specialists, LLC ("ImageFIRST") respectfully submits this Opposition to Petitioner Cintas Corporation's ("Cintas") Petition to Enforce Arbitration Subpoena (Doc. No. 1) (the "Petition").

## I. INTRODUCTION

Cintas' Petition should be denied on the merits and because it is procedurally defective. As a threshold matter, the Court lacks subject matter jurisdiction to entertain the Petition. Cintas invokes diversity jurisdiction under 28 U.S.C. § 1332 yet fundamentally mischaracterizes ImageFIRST's citizenship by alleging that ImageFIRST is a "Delaware corporation with its principal place of business in Pennsylvania." ImageFIRST is not a corporation—it is a limited liability company, and its citizenship is therefore determined by the citizenship of its members, traced iteratively through every layer of its organizational structure. As demonstrated in ImageFIRST's contemporaneously filed Disclosure of Citizenship in Diversity Jurisdiction Cases filed pursuant to Federal Rule of Civil Procedure 7.1(a)(2), *see* Doc No. 15, that structure encompasses more than 70 limited liability companies, limited partnerships, corporations, and individuals. At least one of the individual members in ImageFIRST's direct chain of ownership is domiciled in and therefore a citizen of the State of Washington—Cintas' own state of incorporation—for purposes of 28 U.S.C. § 1332. Complete diversity is thus lacking, and the Petition must be dismissed for this reason alone.

Setting aside the Court's lack of subject matter jurisdiction, the Petition should still be denied on the merits. ImageFIRST is not a party to the pending arbitration between Cintas and Brian Brosnan. Rather, ImageFIRST is a third party from whom Cintas is seeking invasive and burdensome discovery beyond what ImageFIRST has already agreed to produce in response to Cintas' subpoena. Cintas seeks to compel ImageFIRST to comply with three sweeping document requests (Request Nos. 9, 12, and 14 (the "Specific Requests")) that would impose an extraordinary and undue burden on ImageFIRST. Compliance with these requests as written would require ImageFIRST to review upwards of 56,000 documents and incur well over a hundred thousand dollars in discovery costs to review and produce documents in response to these requests. Despite

repeated good-faith efforts by ImageFIRST to negotiate reasonable limitations—including proposed search terms, temporal restrictions, and geographic limitations—Cintas has categorically refused every burden-reducing compromise. Instead, Cintas insists on unfettered access to ImageFIRST's confidential business records in what amounts to an impermissible attempt to reverse engineer a trade secret misappropriation theory against its former employee.

Moreover, contrary to Cintas' suggestions in the Petition, the arbitrator in the underlying arbitration proceeding has made no determination that the documents sought in the subpoena are material to the arbitration. Cintas has never presented ImageFIRST's objections—including its objections on materiality—to the arbitrator for resolution. Accordingly, any order compelling compliance should, at a minimum, be subject to the arbitrator's threshold materiality determination.

Finally, the subpoena is facially invalid under Section 7 of the Federal Arbitration Act ("FAA") because it does not compel attendance at a hearing but instead demands pre-hearing document production—a form of third-party discovery that a majority of federal circuits have found to be categorically prohibited by Section 7's plain language. For all these reasons, the Court should deny the Petition in its entirety.

## II. ARGUMENT[1]

### A. The Court Should Dismiss the Petition for Lack of Subject Matter Jurisdiction Because Cintas and ImageFIRST are not Completely Diverse.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian*

[1] In the arguments that follow, ImageFIRST addresses the allegations raised in Cintas' Petition that are relevant to ImageFIRST's arguments in opposition to Cintas' Petition. ImageFIRST denies the truth of each of the factual allegations raised in Cintas' Petition and by not addressing any particular allegation does not accept them as true for purposes of this proceeding or any other proceeding.

*Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Like any plaintiff in federal court, Cintas bears the burden of establishing the Court's subject matter jurisdiction. *See id.* ("It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." (internal citations omitted)). Cintas has not and cannot make that showing here.

The FAA "does not create any independent federal question jurisdiction under 28 U.S.C. § 1331 or otherwise." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983); *PCS 2000 LP v. Romulus Telecommc'ns.*, 148 F.3d 32, 34–35 (1st Cir. 1998) (citing *Moses* and holding that "[a]s neither the FAA nor any other federal statute furnishes an independent basis for federal jurisdiction, the district court lacked authority either to consider the plaintiffs' complaint or to make any orders in respect to the slated arbitration of the parties' dispute."); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008) ("As for jurisdiction over controversies touching arbitration," the FAA "bestow[s] no federal jurisdiction but rather require[s] an independent jurisdictional basis.").

Cintas has thus invoked the federal diversity jurisdiction statute, 28 U.S.C. § 1332, as its basis for subject matter jurisdiction, alleging that "[b]ecause ImageFIRST is a Delaware corporation with its principal place of business in Pennsylvania, and Cintas is a Washington corporation with its principal place of business in Ohio, there is complete diversity." (*See* Doc. No. 1, Pet. ¶¶ 5, 20 (citing 28 U.S.C. § 1332 as the alleged basis of this Court's subject matter jurisdiction).) Cintas is wrong on the facts and the law.

"Under the federal statute, as relevant here, diversity must be complete; that is, no plaintiff may be a citizen of the same state as any defendant." *BRT Mgmt. LLC v. Malden Storage LLC*, 68 F.4th 691, 695 (1st Cir. 2023). Non-corporate legal entities, such as ImageFIRST Healthcare

Laundry Specialists, LLC, "take the citizenship of all of their members." *See id.* at 696 (citing *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016)). "It is therefore the members' citizenships that are relevant for jurisdictional purposes, not the principal place of business or the state of organization of the entity" as alleged by Cintas. *See id.*; (*see also* Doc. No. 1, Pet. ¶¶ 2, 20 (improperly alleging that ImageFIRST is a "Delaware corporation with its principal place of business in Pennsylvania.").)

Moreover, in cases like here, where the members of a limited liability company "are themselves unincorporated associations, then those members' citizenships are relevant too; the process is iterative, and a party must trace the citizenship of any member that is an unincorporated association through however many layers of members or partners there may be." *BRT Mgmt. LLC*, 68 F.4th at 696 (internal quotations omitted). Complete diversity under 28 U.S.C. § 1332 requires that no plaintiff share the citizenship of any defendant, and this mandate applies strictly to the constituent members of limited liability companies and general and limited partners of limited partnerships. *See id.*; *see also Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96 (1990) (holding that a citizenship of a limited partnership is determined by the citizenship of its general and limited partners).

Here, as evidenced by ImageFIRST's contemporaneously filed Disclosure of Citizenship in Diversity Jurisdiction Cases filed pursuant to Federal Rule of Civil Procedure 7.1(a)(2), *see* Doc No. 15, there are more than 70 limited liability companies, limited partnerships, corporations, and individuals that ultimately hold ownership, membership, or partnership interests in ImageFIRST Healthcare Laundry Specialists, LLC. Of those dozens of limited liability companies, limited partnerships, corporations, and individuals, ImageFIRST has identified at least one individual in the direct chain of ownership who is domiciled in and therefore a citizen of the State of

Washington, which is Cintas' state of incorporation. (*See id.*; *see also* Doc. No. 1, Pet. ¶ 1 (alleging that Cintas is a "corporation organized and existing under the laws of the State of Washington").) Thus, ImageFIRST is not completely diverse from Cintas for purposes of diversity jurisdiction, and this Petition must be dismissed for a lack of subject matter jurisdiction. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) ("The presence of [a] nondiverse party automatically destroys original jurisdiction: No party need assert the defect. No party can waive the defect or consent to jurisdiction.").

**B. The Court Should Sustain ImageFIRST's Objections to the Subpoena.**

Even if the Court had jurisdiction to hear this matter, which, respectfully, it does not, the Petition should still be denied for at least three independent reasons. First, compliance with the Specific Requests would impose an undue burden on ImageFIRST, a non-party to the arbitration. As written, the Specific Requests seek documents that are not material to the arbitration and would require ImageFIRST to extract and review voluminous amounts of data and incur extraordinary cost beyond the production it has already agreed to make.[2] Despite ImageFIRST's repeated efforts to reach a reasonable compromise, Cintas has refused to meaningfully narrow its demands to alleviate that burden here.

Second, even if the Court were inclined to compel some level of compliance, any such relief would be premature because the arbitrator has not yet determined whether the information sought in the Specific Requests is material to the arbitration—a threshold determination that must be made before compliance is compelled.

[2] As conceded by Cintas, ImageFIRST agreed to produce documents in response to several of the requests in the subpoena and provided supplemental responses to other requests that it originally objected to in its initial responses. (*See* Doc. No. 1, Pet. ¶ 14 (citing Doc. Nos. 1-3 (Ex. C) and 1-5 (Ex. E).)

Third, the subpoena is unenforceable on its face because it seeks to compel the production of documents outside of an arbitral hearing, exceeding the limited authority of an arbitrator conferred by Section 7 of the FAA. In substance, Cintas seeks pre-hearing discovery from a non-party, a form of relief that Section 7 does not authorize.

**1. The Court Should Sustain ImageFIRST's Objections Because Compliance with the Specific Requests Would Impose an Undue Burden on ImageFIRST.**

As recognized by the cases cited in Cintas' Petition, federal courts ruling on a request to enforce an arbitration subpoena "retain their duty to enforce Fed. R. Civ. P. 45's protections, particularly the mandate that a subpoena should be tailored to avoid imposing undue burden or expense." *See Maine Community Health Options v. CVS Pharmacy, Inc.*, Case No. 20-10-JJM, 2020 U.S. Dist. LEXIS 40313, at *11 (D.R.I. Mar. 9, 2020) (declining to enforce requests in arbitration subpoena that "appear[ed] to the Court to be hopelessly broad and burdensome, sweeping far beyond what is appropriate for a Fed. R. Civ. P. 45 subpoena").

Rule 45 mandates that a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Rule also requires that a federal court must "quash or modify a subpoena that . . . subjects a person to undue burden." *Id.* at 45(d)(3)(A)(iv). The "burden" assessment requires "weigh[ing] the burden to the subpoenaed party against the information's value to the serving party." *See, e.g.*, *W Holding Co., Inc. v. Chartis Ins. Co. of P.R.*, 42 F. Supp. 3d 319, 321–22 (D.P.R. 2014).

In this Circuit, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). "In determining whether a subpoena imposes an 'undue burden,' the court considers 'such factors as relevance, the need of the party for the documents, the breadth

of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *W. Holding Co.*, 42 F. Supp. 3d at 322 (quoting *United States v. International Business Machines Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979)). Where requests in a subpoena are crafted so broadly that it requires a non-party to identify numerous custodians, run search terms, and conduct an extensive, costly review of the resulting files, courts will find that an undue burden exists and will refuse to compel compliance or will require cost-shifting. *See Maine Community Health Options*, 2020 U.S. Dist. LEXIS 40313, at *17 & *19 (denying a request to compel responses to certain requests in an arbitration subpoena based on undue burden because it would require the "identification of custodians, the use of search terms, and burdensome follow-up to review before producing"); *see also Barclays PLC v. FX Transparency, LLC*, Case No. 1:22-mc-91048-PBS, 2022 U.S. Dist. LEXIS 150884, at *8-9 (D. Mass. April 27, 2022) (refusing to compel compliance with certain requests absent cost-shifting where responding to the requests would require conducting costly and high-volume key word searches).

Ignoring these principles, Cintas argues that responding to the Specific Requests do not impose an undue burden on ImageFIRST because the documents sought by those requests "likely have or will in the near future be collected and produced in any event in a co-pending federal district court action pending in the Eastern District of Pennsylvania between Cintas and ImageFIRST." (*See* Doc. No. 1, Pet. ¶ 24.) This argument fails for at least two reasons.

First, the parties in the federal litigation are still in the preliminary phases of discovery in that action, including meeting and conferring on objections to discovery requests and limiting the scope of requests, and neither party has produced a single document, let alone the overbroad discovery sought through the Specific Requests. Thus, there has been no determination that

ImageFIRST will be "required to collect and produce the very documents sought in the Subpoena" as Cintas speculates to be the case. (*Id.*) Second, and perhaps more importantly, this argument does nothing to show that the Specific Requests do not impose an undue burden on ImageFIRST in the context of this arbitration when considering ImageFIRST's non-party status to the arbitration as required by Rule 45.

Moreover, where, as here, a non-party subpoena arises out of an arbitration, the scope is even more limited. *See* 9 U.S.C. § 7 (limiting an arbitrator's authority to require a witness to produce records at a hearing which "may be deemed material as evidence in the case"). Courts have therefore recognized that Section 7 does not authorize the broad, discovery-style requests commonly permitted under Rule 26. *See Maine Community Health Options*, 2020 U.S. Dist. LEXIS 40313, at *10-12. Instead, a party seeking to enforce an arbitration subpoena must demonstrate that the requested information constitutes material evidence needed for the arbitration itself, not merely that the information could lead to relevant evidence or assist in developing potential claims. *Id*. ("the court's traditional relevancy determination based on Fed. R. Civ. P. 26(b)(1) is set aside in favor of the arbitration panel's determination of materiality").

As discussed below, a plain reading of the Specific Requests and the parties' meet and confer correspondence demonstrates that Cintas has failed to comply with Rule 45's mandate that it "take reasonable steps to avoid imposing undue burden or expense subject to the subpoena" by proposing or agreeing to any burden-reducing compromises. (*See* **Ex. 1**, Cintas' Counsel 6/15/2026 Email; Doc. No. 1-4, Cintas' Counsel 8/20/2026 Email (stating that ImageFIRST was standing on its objections with respect to the Specific Requests, but that it would consider a narrowed scope for these topics); **Ex. 3**, ImageFIRST's Counsel's 10/8/2026 Email (proposing a narrowed scope for the Specific Requests).) For these reasons, the Court should sustain

ImageFIRST's objections because compliance with the Specific Requests would subject ImageFIRST to an undue burden.

**a. Request No. 9**

Request No. 9 seeks "[a]ll documents and materials relating to sales activities and other work performed by Brosnan on behalf of ImageFIRST, including any presentations, proposals, or marketing materials related to same." (Doc. No. 1-3, ImageFIRST's Subpoena Response, p. 11.) While Cintas argues that this request is necessary to determine whether Mr. Brosnan has incorporated any of the information he allegedly misappropriated into materials he has utilized at ImageFIRST, the request reaches far beyond such documents and instead seeks the production of every document that references any work performed by Mr. Brosnan at ImageFIRST. Cintas has refused to reasonably tailor the request to target such documents; nor has it offered, much less agreed to, search parameters that would reduce the burden imposed by this request. (*See* Doc. No. 1, Pet. ¶ 16(a); **Ex. 1**, Cintas' Counsel 6/15/2026 Email (refusing search term limitations with respect to Request No. 9).)

Compliance with this request would be extraordinarily burdensome on ImageFIRST. As written, Request No. 9 requires ImageFIRST to review and consider for production virtually every email, message, communication, word processing document, spreadsheet, presentation, or other document Mr. Brosnan sent, received, created, viewed, or edited since he joined ImageFIRST in February 2025 to determine whether it may tangentially or indirectly relate to any "work performed" by Mr. Brosnan. Given the size of Mr. Brosnan's ImageFIRST email and document data, along with the fact that there is not a central repository where these materials would be contained, this alone would require the review of over 56,000 documents and require ImageFIRST to incur well over a hundred thousand dollars in discovery costs. (Declaration of Joseph T. Charron Jr. ("Charron Dec."), attached as **Exhibit 2** at ¶¶ 13-18.)

ImageFIRST made several proposals to reduce this burden, each of which were rejected by Cintas. For example, ImageFIRST proposed searching Mr. Brosnan's Microsoft Outlook, Teams, and OneDrive data ("Brosnan's Data") using the term "Cintas" and file names of the documents Cintas' forensic examination suggests were taken from Mr. Brosnan's Cintas computer (which file names ImageFIRST has not seen and have never been provided to this date) as search terms. Not only did Cintas reject ImageFIRST's proposals, it refused to limit the search to Brosnan's Data on the theory that doing so would "artificially limit the scope of responsive material." (*See* **Ex. 1**, Cintas' Counsel 6/15/2026 Email (refusing search term limitations with respect to Request No. 9).) Thus, compliance with this request would require ImageFIRST to go well beyond searching Brosnan's Data, which alone consists of more than 56,000 documents, and expand its review to additional custodians and data sources throughout the company, effectively requiring ImageFIRST to search every document in its system to identify those that might conceivably relate to Mr. Brosnan's activities since joining ImageFIRST. (**Ex. 2**, Charron Dec. at ¶ 9.)

Compounding this issue, Cintas has also refused to identify the specific documents Mr. Brosnan allegedly downloaded from Cintas' systems and the specific confidential and/or trade secret information those documents purportedly contain. Cintas also fails to provide such details to this Court. As noted above, ImageFIRST agreed to consider a narrowed scope for Request No. 9. After Cintas filed the Petition without making any such proposal, ImageFIRST proposed a targeted limitation in which Cintas would identify the documents and alleged confidential or trade secret information at issue, after which ImageFIRST would search for and produce exemplar documents containing the same categories of information, if any exist. (*See* **Ex. 3**, ImageFIRST's 10/8/2026 Email.) That proposal would have allowed ImageFIRST to conduct a targeted search for specific documents that could contain the allegedly misappropriated information while

avoiding the enormous burden imposed by Request No. 9 as written. But Cintas failed to respond, much less agree, to ImageFIRST's proposal.

In other words, rather than agree to any reasonable limitations designed to identify the allegedly misappropriated information, Cintas seeks to compel ImageFIRST to find and produce all documents and materials relating to Mr. Brosnan's "sales activities and other work performed by Brosnan on behalf of ImageFIRST." This is not a targeted effort to determine whether Mr. Brosnan has incorporated Cintas information into his work for ImageFIRST as Cintas contends. (Doc. No. 1, Pet. at pp. 8-9.) Rather, it is an improper attempt to reverse engineer a misappropriation claim against Mr. Brosnan. *See Merck Sharp v. Pfizer*, Case No. 19-2011, 2021 U.S. Dist. LEXIS 120206, at *8-9 (E.D. Pa. June 28, 2021) ("Merck's attempt to obtain the entirety of Pfizer's program for the past decade—without tailoring the requests to the trade secrets at issue—appears to be an attempt to reverse engineer the discovery process in the hopes of uncovering a new theory of Dr. Watson's alleged theft.").

The Court should not countenance such an improper attempt to obtain expansive discovery untethered to the actual claims in arbitration, especially when doing so would impose an undue burden on ImageFIRST. Because Cintas has not made an effort to explain what specific documents it is seeking or otherwise limit this request to reduce the burden imposed on ImageFIRST, the Court should sustain ImageFIRST's objection to this request. *See Maine Community Health Options*, 2020 U.S. Dist. LEXIS 40313, at *17 (sustaining a non-party's objections where the proponent of the subpoena "focused very little effort on explaining what it is after and did not suggest any burden-reducing compromises").

**b. Request No. 12**

Request No. 12 seeks "[a]ll documents and communications concerning ImageFIRST's actual or potential competition with Cintas, including identification of particular customers or

potential customers for which ImageFIRST and Cintas are competing, the products or services with respect to which ImageFIRST and Cintas are competing, and related competitive analyses, strategy documents, and communications." (Doc. No. 1-3, ImageFIRST's Subpoena Response, p. 14.) Cintas has made no effort to limit this request to its claims against Mr. Brosnan or to limit the scope of this request in any reasonable manner (*e.g.*, to limit this request to a specific time frame, geographic region, or specific customers serviced by Mr. Brosnan while employed by Cintas).

Similar to Request No. 9, compliance with this request as written would require ImageFIRST to review and consider for production virtually every email, message, other communication, word processing document, spreadsheet, presentation, or other document sent to, received by, created by, or edited by ***any*** current or former ImageFIRST employee, customer, potential customer, former customer, or other person ***during ImageFIRST's entire history***—which dates back to 1967—simply because such documents may tangentially or indirectly concern ImageFIRST's actual or potential competition with Cintas.

For example, ImageFIRST would have to analyze its thousands of customer relationships across five decades to determine whether there is any reference to such customer also doing business with Cintas. Doing so would require the "identification of custodians, the use of search terms, and burdensome follow-up to review before producing," which courts routinely find is inappropriate for non-party arbitration subpoenas. *Maine Community Health Options*, 2020 U.S. Dist. LEXIS 40313, at *17 & *19; *see also* **Ex. 2**, Charron Dec. at ¶¶ 9-10.) The potential probative value of the discovery sought in this request is clearly and substantially outweighed by the burden and expense imposed on third party ImageFIRST. *See, e.g., In re Asacol Antitrust Litig.,* Case No. 15-12730-DJC, 2017 U.S. Dist. LEXIS 225917, at *36 (D. Mass. June 14, 2017).

Similar to Request No. 9, ImageFIRST proposed search terms to limit the scope of this request and target documents that may be material to the arbitration, but Cintas rejected each proposal. (*See* **Ex. 1**, Cintas' Counsel 6/15/2026 Email (refusing search term limitations with respect to Request No. 12).) For example, ImageFIRST requested that Cintas provide ImageFIRST's counsel with the names of customers Mr. Brosnan serviced during his employment with Cintas (limited to a reasonable time period, such as the last two years of his employment) to determine if ImageFIRST and Cintas competed with respect to any such customers. Cintas refused. (*Id.*) More recently, ImageFIRST proposed that, upon Cintas' identification in writing of: (1) the specific entities for which Cintas contends that it and ImageFIRST compete within the geographic territory in which Mr. Brosnan currently works for ImageFIRST; and (2) the specific products or services Cintas sold or attempted to sell to those entities during the last two years of Mr. Brosnan's employment with Cintas, ImageFIRST would provide an affidavit from an appropriate ImageFIRST representative confirming whether ImageFIRST has submitted bids to those entities for the identified products or services. (*See* **Ex. 3**, ImageFIRST's Counsel's 10/8/2026 Email.) Cintas did not respond to this proposal—even though the very case law Cintas cites in its Petition supports such an approach to alleviate a non-party's burden. *See Maine Community Health Options*, 2020 U.S. Dist. LEXIS 40313, at *18 (allowing the non-party to comply with a request by "providing a sworn description of its methodology in lieu of hunting down and producing one or more specific documents."). The Court should sustain ImageFIRST's objection to this request because of the undue burden that would be caused by complying with this request as written.

**c. Request No. 14**

Request No. 14 seeks "[a]ll documents sufficient to identify Brosnan's participation, input, or involvement in any customer solicitations, including but not limited to, each customer and prospective customer with which Brosnan has communicated in any way, and any bids, proposals,

and quotes furnished with respect to any such customer or prospective customer." (Doc. No. 1-3, ImageFIRST's Subpoena Response, at p. 14.) According to Cintas, this information is necessary to "determine whether [Mr.] Brosnan breached his non-solicitation obligations to Cintas" and whether he utilized Cintas' confidential information in doing so. (*See* Doc. No. 1, Pet. ¶ 16(c).) But a plain reading of Request No. 14 shows that it extends far beyond documents related to Cintas' non-solicitation claims against Mr. Brosnan.

Rather than seeking targeted documents material to its non-solicitation claim, Cintas demands that ImageFIRST (1) identify **every** customer or prospective customer with whom Mr. Brosnan has communicated since joining ImageFIRST, and (2) produce every bid, proposal, or quote furnished to those customers—regardless of whether Mr. Brosnan serviced or solicited such customers during his employment with Cintas. This sweeping request exceeds the permissible scope of non-party subpoenas under Section 7 of the FAA. *See* 9 U.S.C. § 7 (limiting an arbitrator's authority to require a witness to produce records at a hearing which "may be deemed material as evidence in the case"); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (affirming motion to quash subpoenas under Fed. R. Civ. P. 26(b)(1)'s more lenient relevancy standard because the court "will not allow [defendant] to go on a fishing expedition, with the mere hope that it will obtain" potentially relevant information) (internal quotations omitted)).

As with the other two requests, ImageFIRST proposed reasonable limitations to Request No. 14 that would identify documents potentially relevant to Cintas' claims while avoiding the undue burden imposed by the request as drafted. ImageFIRST asked Cintas to provide ImageFIRST's counsel with the names of customers Mr. Brosnan serviced during his employment with Cintas (limited to a reasonable time period, such as the last two years of his employment) so

that ImageFIRST could determine whether Brosnan has had any interactions with those customers during his employment with ImageFIRST.[3] (*See* **Ex. 1**, Cintas' Counsel 6/15/2026 Email.) Cintas refused, arguing that it had no obligation to identify customers that would actually be relevant to its non-solicitation claim against Mr. Brosnan. (*Id.*)

In addition to the undue burden imposed by this request, compliance would also require ImageFIRST to produce documents concerning customers with no connection to Cintas that could not reasonably be deemed material evidence in the arbitration. *See* 9 U.S.C. § 7. Therefore, the Court should sustain ImageFIRST's objection to this request. *See Maine Community Health Options*, 2020 U.S. Dist. LEXIS 40313, at *17 (sustaining a non-party's objections where the proponent of the subpoena "focused very little effort on explaining what it is after and did not suggest any burden-reducing compromises").

**2. Whether the Specific Requests Seek Documents That are Material to the Arbitration is Reserved for the Arbitrator, and No Materiality Determination has Been Made.**

The parties agree that the determination of whether documents are material to the underlying arbitration under Section 7 of the FAA is an issue reserved for the arbitrator. (*See* Doc. No. 1, Pet. ¶ 22 (citing *Maine Community Health Options*, 2020 U.S. Dist. LEXIS 40313, at *10-12).) However, contrary to the allegations in Cintas' Petition, the arbitrator in the underlying arbitration <u>has not</u> determined that any of the requests in the subpoena are material to the arbitration. (*See* Doc. No. 1, Pet. ¶ 21.)

[3] In response to a nearly identical request, ImageFIRST offered to consult with Mr. Brosnan regarding the customers he serviced during his employment with Cintas to determine whether he has communicated with or sold products or services to such customers during his employment with ImageFIRST. (*See* Doc. 1-3 at Request No. 10.) Cintas rejected that proposal as well, and instructed ImageFIRST's counsel not consult with Mr. Brosnan on that issue. (*See* Doc. 1-4.)

Cintas has not presented any of ImageFIRST's objections to the arbitrator, including ImageFIRST's objections on materiality, much less obtained a ruling from the arbitrator that the requested documents are material to the arbitration. Thus, while the burdensome nature of the Specific Requests provides the Court sufficient grounds to not compel compliance with the Specific Requests as written, if the Court were to order compliance with any of the Specific Requests, it should do so subject to the arbitrator's determination on materiality, which has not yet been made. *See Maine Community Health Options*, 2020 U.S. Dist. LEXIS 40313, at *16 ("this recommendation that CVS must comply by producing any transaction data is based on Health Options' representation that the Arbitration Panel has already deemed such data to be material. If CVS moves to quash the subpoena based on the non-materiality of the data in the Arbitration and the Panel grants that motion, this Court's order of enforcement as to the transaction data may be deemed to be void."); *id.* at *18. Absent an arbitrator determination, the Court should hesitate to compel compliance, particularly where substantial burden is involved.

**3. The Subpoena is Unenforceable on its Face Because it Improperly Seeks Pre-Hearing Discovery Prohibited by Section 7 of the FAA.**

In addition to the Specific Requests being burdensome and seeking documents that are not material to the arbitration, the subpoena is also unenforceable on its face because it improperly seeks pre-hearing discovery in violation of Section 7 of the FAA. *See* Doc. No. 1-1, Subpoena at p. 1 (demanding production of documents within 14 days of service).

Section 7 of the FAA provides, in relevant part, as follows: "The arbitrators selected either as prescribed in this title [9 U.S.C. §§ 1 et seq.] or otherwise, or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case ***to bring with him or them*** any book, record, document or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7 (emphasis added).

While the United States Court of Appeals for the First Circuit has not yet had occasion to address this unambiguous provision, the majority view adopted by the Second, Third, Ninth, and Eleventh Circuits is that the clear and unambiguous language of Section 7 of the FAA categorically prohibits an arbitrator from allowing pre-hearing third-party discovery. *See Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 411 (3d Cir. 2004) ("Section 7's language unambiguously restricts an arbitrator's subpoena power to situations in which the non-party has been called to appear in the physical presence of the arbitrator and to hand over documents at that time"); *see also Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1159–1161 (11th Cir. 2019) ("[T]he plain language of the statute is unambiguous in requiring witnesses to appear before an arbitrator and bring any documents with them, thus prohibiting pre-hearing discovery from non-parties"); *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 708 (9th Cir. 2017) ("[S]ection 7 of the FAA does not grant arbitrators the power to order third parties to produce documents prior to an arbitration hearing."); *Lie Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 212 (2d Cir. 2008) ("The language of section 7 is straightforward and unambiguous. Documents are only discoverable in arbitration when brought before arbitrators by a testifying witness."); *but see In re Security Life Ins. Co. of Am.*, 228 F.3d 865, 870–71 (8th Cir. 2000).[4]

---

[4] The Eighth Circuit did not identify any doctrinal basis or employ any canons of construction in arriving at an interpretation that is contrary to the express language of Section 7. Instead, the Eighth Circuit's rationale that Section 7 "implicitly" authorized pre-hearing discovery in some cases solely rested on the interest of efficiency advanced by the FAA as a whole. *See In re Security Life Ins. Co. of Am.*, 228 F.3rd at 870–71. However, several courts have refused to follow the Eighth Circuit reasoning that "[i]n the face of an unambiguous statute, it is inappropriate for a court to read in an implied power simply because in the court's judgment it may make good sense to include such authority." *See, e.g., Next Level Planning & Wealth Mgmt., LLC v. Prudential Ins. Co. of Am.*, Case No. 18-MC-65, 2019 U.S. Dist. LEXIS 23375, at *10 (E.D. Wisc. Feb. 13, 2019).

The subpoena that Cintas seeks to enforce is invalid on its face because it explicitly does not compel attendance at a hearing but instead compels the production of documents within 14 days of service, which exceeds the arbitrator's authority under Section 7 of the FAA. *See* Doc. No. 1-1, Subpoena at p. 1. By choosing to resolve its disputes with Mr. Brosnan by arbitration governed by the FAA, Cintas was on notice that it would have more limited rights to third-party discovery than had it agreed to litigate its disputes. *See, e.g.*, *Next Level Planning & Wealth Mgmt., LLC*, 2019 U.S. Dist. LEXIS 23375, at *11 ("When parties agree to settle their disputes through arbitration, it comes with tradeoffs, one of which is foregoing the full panoply of discovery available in litigation."); *see also id.* at *14 ("[L]imitations on document production from third-parties is hardly radical."). Cintas has not asked the arbitrator to convene a hearing for the purpose of obtaining documents from ImageFIRST nor has it explained how doing so would be permitted under the FAA or the terms governing the arbitration between Cintas and Mr. Brosnan. Therefore, the subpoena is invalid on its face and of no force and effect.

## III. CONCLUSION

ImageFIRST respectfully requests that the Court dismiss Cintas' Petition for lack of subject matter jurisdiction. Even if the Court finds a basis for jurisdiction in this proceeding, ImageFIRST requests that the Court sustain ImageFIRST's objections, deny the Petition, and decline to require ImageFIRST to comply with Request Nos. 9, 12, and 14 in the subpoena as currently written. If the Court concludes that ImageFIRST has failed to persuade on the merits of its objections, then ImageFIRST respectfully requests that the Court deny enforcement without prejudice pending a materiality determination by the arbitrator.

Dated: October 19, 2026

Respectfully submitted,

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

/s/ *Craig Waksler*
Craig Waksler (BBO #566087)
Jill K. Hauff (BBO #653886)
Two International Place, Suite 1600
Boston, MA 02110
Tel: 617 342 6800
Fax: 617 342 6899
Email: cwaksler@eckertseamans.com
Email: jhauff@eckertseamans.com

**BAKER & MCKENZIE LLP**

Joseph T. Charron Jr. (*pro hac vice* pending)
300 East Randolph Street, Suite 5000
Chicago, IL 60601
Tel: 312 861 8000
Fax: 312 861 2899
Email: JT.Charron@bakermckenzie.com

*Attorneys for Non-Party Respondent*
*ImageFIRST Healthcare Laundry Specialists, LLC*

**CERTIFICATE OF SERVICE**

I certify that on October 19, 2026, this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those parties who are non-registered participants.

*/s/ Craig Waksler*
Craig Waksler