# Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Cintas Corporation<br><br>Petitioner,<br><br>-against-<br><br>ImageFIRST Healthcare Laundry Specialists, LLC,<br><br>Respondent. | Civil Action No. 1:26-mc-91496-AK |

**DECLARATION OF JOSEPH T. CHARRON JR. IN SUPPORT OF NON-PARTY IMAGEFIRST HEALTHCARE LAUNDRY SPECIALISTS, LLC'S OPPOSITION TO CINTAS CORPORATION'S PETITION TO ENFORCE ARBITRATION SUBPOENA**

I, Joseph T. Charron Jr., make the following Declaration based on my personal knowledge of the matters set forth herein. I am a partner at Baker & McKenzie LLP, counsel to Respondent ImageFIRST Healthcare Laundry Specialists, LLC ("ImageFIRST") in this matter. I am licensed to practice in the States of Illinois and Missouri and have sought to be admitted *pro hac vice* in this action. I submit this Declaration in support of ImageFIRST's Opposition to Cintas Corporation's ("Cintas") Petition to Enforce Arbitration Subpoena (the "Petition"). The following facts are of my personal knowledge, and if called as a witness, I could and would testify competently thereto.

1. Over the last approximately two years, I have personally been involved in Baker & McKenzie LLP's representation of ImageFIRST in several legal matters involving Cintas, including responding to third-party subpoenas in arbitration proceedings Cintas filed against departing Cintas employees and overseeing the collection, review, and production of documents to respond to Cintas' subpoena. In addition to the subpoena at issue in the Petition relating to claims Cintas filed against Brian Brosnan (the "Brosnan Subpoena"), I was also involved in

overseeing the collection, review, and production of documents to respond to Cintas' subpoena in a AAA arbitration Cintas filed against David Hilderbrand in October 2024 (the "Hilderbrand Subpoena").

2. Through my involvement in Baker & McKenzie LLP's representation of ImageFIRST in these matters, I am intimately familiar with the process normally followed by ImageFIRST to collect, review, and produce data when a matter requires ImageFIRST to do so, as well as the costs associated with this process, including the e-discovery processing costs and Baker & McKenzie LLP attorneys' fees incurred by ImageFIRST to complete this collection, review, and production.

3. To respond to the Brosnan Subpoena, ImageFIRST through counsel collected Mr. Brosnan's Microsoft Outlook, Teams, and OneDrive data ("Brosnan Data") from the beginning of his employment at ImageFIRST in February 2025, through the date of collection in June 2026. The costs for processing this data alone cost $4,500.

4. After de-duplication, Brosnan's Data consists of over 56,000 separate documents to be reviewed.

5. Given the size of the Brosnan Data, and the fact that there is no central repository where the documents sought by Request Nos. 9, 12, and 14 would be contained, responding to these requests would at minimum require ImageFIRST to review and consider for production virtually every email, message, other communication, word processing document, spreadsheet, presentation, or other document sent to, received by, created by, or edited by Mr. Brosnan during his entire employment with ImageFIRST.

6. I met with Cintas' counsel on June 9, 2026 regarding the scope of Cintas' subpoena and the burden on ImageFIRST. During that call, I proposed searching Brosnan's Data using the

term "Cintas" and the file names of the documents Mr. Brosnan allegedly misappropriated. Cintas' counsel refused to agree to the proposed search terms. He also rejected the proposal to limit the search to Brosnan's Data, and asserted that using the proposed search parameters to review such data would "artificially limit the scope of responsive material." A true and correct copy of the email correspondence memorializing that discussion is attached as **Exhibit 1**.

7. Although Cintas' counsel initially agreed to propose alternative search terms, no such terms were ever provided. (*See* **Ex. 1**.)

8. Without any such search terms or other parameters limiting the scope of Cintas' requests, ImageFIRST would need to review all 56,000 documents in Brosnan's Data to determine whether responsive documents exist.

9. Given that Cintas did not agree to limit the search for responsive documents to Brosnan's Data, compliance with Request Nos. 9, 12, and 14 as written and demanded by Cintas would require ImageFIRST to expand the scope of its search beyond the 56,000 documents referenced above to other unidentified custodians and data sources.

10. ImageFIRST has not collected documents from those additional custodians or data sources to date and, as a result, has not determined the volume of additional data that would need to be reviewed.

11. On October 8, 2026, I made a second proposal to Cintas' counsel that would allow ImageFIRST to identify responsive documents without incurring the excessive burden outlined above. A true and correct copy of my October 8, 2026 proposal is attached as **Exhibit 3**.

12. As of the date of this Declaration, Cintas' counsel has not responded to those proposals.

13. I estimate that the collection, review, and production needed to comply with Request Nos. 9, 12, and 14 as written and demanded by Cintas would require ImageFIRST to incur at least an additional $150,000 in attorneys' fees and costs beyond what ImageFIRST has incurred in responding to the subpoena to date.

14. This estimate is based on (1) the size of Brosnan's Data; (2) Cintas' refusal to limit ImageFIRST's review to Brosnan's Data or provide search terms; and (3) my experience overseeing the collection, review, and production of documents in response to the Hilderbrand Subpoena, including my review of billing records detailing the attorneys' fees and costs ImageFIRST incurred in reviewing and producing documents in response to the Hilderbrand Subpoena.

15. Specifically, in responding to the Hilderbrand Subpoena, Cintas agreed to limit the collection and review of documents to Mr. Hilderbrand's Microsoft Outlook, Teams, and OneDrive data ("Hilderbrand Data"). Cintas also agreed to ImageFIRST's proposal to run search terms across the Hilderbrand Data to identify responsive documents.

16. The Hilderbrand Data consisted of 23,476 documents, approximately half the number of documents in the Brosnan Data.

17. Even using the agreed upon search terms and limiting the scope of ImageFIRST's review to the Hilderbrand Data, ImageFIRST incurred over $90,000 in costs and fees to review, identify, and produce documents responsive to the Hilderbrand Subpoena.

18. Given the larger volume of the Brosnan Data, Cintas' refusal to provide search terms, and demand that ImageFIRST expand the scope of its search beyond the Brosnan Data, I can reasonably estimate that the fees and costs ImageFIRST will incur to review, identify, and

produce documents responsive to the Brosnan Subpoena will far exceed the fees and costs ImageFIRST incurred in responding to the Hilderbrand Subpoena.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 19th day of October 2026 in Chicago, IL.

/s/ *Joseph T. Charron Jr.*
Joseph T. Charron Jr.
Attorney for Non-Party Respondent
ImageFIRST Healthcare Laundry
Specialists, LLC